# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

                              CR No: 07-20130
                              Honorable Denise Page Hood

-v-

**HAKIM HOYLE**,
a/k/a/ CARLTON HOYLE

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion to Suppress Evidence, filed on July 17, 2007. The Government filed a Response on August 6, 2007. The Court held evidentiary hearings on the motion on October 2, 22, and 26, 2007.

**II.    BACKGROUND**

    A.    Briefs

The Government's brief alleges as follows: On December 20, 2006, at 2:50 a.m., Detroit Police Officers were dispatched to investigate "bitter" complaints of drug trafficking at 2907 Fourth Street, a unit within Jeffries Projects. The location was known by police officers to be vacant, without valid electricity, and without front or rear door locks.

As the officers approached the unit, Defendant Hakim Hoyle opened the front door and attempted to exit. However, when Defendant saw the officers approaching, he attempted to close the door, ran back into the house, and fled to the basement. The officers followed and witnessed Defendant remove objects from his pocket and place them in a furnace duct. The officers recovered

two clear plastic bags of crack cocaine (19.22 grams) and a loaded .22 caliber revolver from the duct and subsequently arrested Defendant.

The Indictment against Defendant alleges three counts: 1) Felon-Firearm, 18 U.S.C. § 922(g) (Count I); 2) Possession of Cocaine Base with intent to distribute, 21 U.S.C. § 841(A)(1) (Count II); and 3) Carrying a Firearm During and in Relation to a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A) (Count III).

B. Testimony

The Court heard testimony from several Detroit Police Department officers on October 2, 2007 and October 22, 2007. On October 2, the Court heard testimony from Officer Craig Schramek ("Schramek"). On October 22, the Court heard testimony from Officers Gary Przybyla ("Przybyla"), Edward Lawson ("Lawson"), LaShawn Peoples ("Peoples"), Steven Thompson ("Thompson"), and Christopher Rhinehard ("Rhinehard").[1] The Court heard testimony from Defendant on October 26, 2007.

Officer Przybyla arrested Defendant. Przybyla testified that he was the first officer to enter the front door of the unit, followed by Officer Lawson, his partner. As they approached the front door, Przybyla testified that Defendant opened the door, said "Oh Shit," and unsuccessfully attempted to close the door. Przybyla then chased Defendant through the living room and kitchen into the basement, where Przybyla placed Defendant under arrest. Before arresting Defendant, however, Przybyla saw Defendant place something into an open furnace duct. Lawson, who

---

[1] Officers Thompson and Rhinehard were called as defense witnesses. Neither officer had any contact with Defendant during the raid. The Court limited defense counsel's questioning of these officers to the specific issues of whether they had personal logs of "bitter complaints" or previous encounters at the raided unit, and whether any residents of the Jeffries Projects had filed a complaint against them. Both officers responded in the negative to these questions.

2

followed Przybyla into the basement, searched the duct under the direction of Przybyla. In the duct, Lawson discovered narcotics and a weapon.

Przybyla indicated that he believed the unit to be vacant at the time he arrested Defendant, because the unit was listed in a Detroit Department of Housing vacant unit report.[2] Przybyla testified that he and his fellow officers often relied on such periodically generated reports, which contained a list of vacant Jeffries Projects units. Przybyla remembered that the unit had damaged locks, working electricity, and a dog on the porch. He also remembered seeing a television and torn couches in the unit.

During cross examination, Przybyla explained the term "bitter complaint." According to Przybyla, "bitter complaints" are complaints of narcotics activity which can be made directly from citizens to officers or through the city-wide 224-DOPE hotline number. Przybyla further testified on cross-examination that on the day he arrested Defendant, the officers did not raid the unit because of a *specific* bitter complaint. Rather, the decision to raid the unit came directly from Officers Peoples and Schramek, two officers who had been conducting surveillance on the unit earlier that day. Peoples and Schramek informed Przybyla of the intent to raid the unit one or two hours before the actual raid. On no prior occasions had Przybyla entered the raided unit.

Officer Lawson's testimony corroborated much of Przybyla's. In addition, Lawson testified that he did not see a dog on the premises, but that he saw a kitchen table. Lawson testified that none of the individuals in the unit, including Defendant, claimed to live in the unit. Lawson also testified that no bitter complaint of drug activity received by the Detroit Police Department specifically

---

[2]The Government attempted to submit a Department of Housing vacant unit report at the October 2, 2007 hearing. However, because the list offered by the Government had been generated after Defendant's arrest, it was not admitted into evidence.

referred to the raided unit, but that the bitter complaints of drug activity referred generally to the Jeffries Projects.

Peoples testified that he entered the back door of the unit with his partner, Schramek. They chased another individual, Mr. Fordham, to the second floor of the unit. They did not have any contact with Defendant during the raid.

Peoples testified that he had previously issued loitering tickets in front of the unit. Peoples confirmed that he had conducted surveillance of the unit earlier that day, on foot, for approximately one hour. During the surveillance, he observed more than 20 people going in and out of the unit, and at least 10 hand-to-hand suspected drug transactions in the back doorway and courtyard area. Peoples neither observed Defendant participate in any of the transactions nor enter or exit the unit. Based upon his surveillance, Peoples met with approximately six other officers at a nearby Masonic Temple to devise a plan to raid the unit. Peoples did not recall seeing any furnishings on the second floor of the unit.

Schramek, who followed Peoples in the back door and up to the second floor of the unit in pursuit of Mr. Fordham, recalled seeing mattresses and clothes on the floor in the upstairs portion of the unit. On cross-examination, Schramek testified that the officers had not attempted to obtain a search warrant of the raided unit within the 30 days prior to the raid. He also testified that the officers, without search warrants, had previously entered other units within the Jeffries Project that they believed to be vacant.

At the October 26, 2007 hearing, Defendant testified that he regularly traveled to the Jeffries projects to visit his paternal relatives. He testified that on the night of the raid, he went to 2907

4

Fourth Street with a childhood friend, Delano Brown,[3] to gamble and consume alcohol. He further testified that he went to the unit hoping to see a woman he did not know, but had previously seen.[4]

## III.   APPLICABLE LAW & ANALYSIS

Defendant argues that the Government has failed to prove that the raided unit was vacant, that the officers had probable cause to enter the unit, or that exigent circumstances justified a warrantless search of the unit. Even in *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005), he argues, a case which involved an alleged vacant dwelling, police officers obtained a search warrant before entering the unit. With respect to the issue of standing, Defendant argues that he was more than a casual guest at the unit. Additionally, Defendant invites the Court to extend the holding of *Brendlin v. California*, 127 S. Ct. 2400 (2007) to the facts of this case.

In response, the Government argues that the officers offered credible testimony that the unit was vacant, and that, in any event, the Fourth Amendment does not apply to drug houses, because there is no expectation of privacy in a drug house.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Minneosta v. Carter*, 119 S. Ct. 469, 473 (1998). In order to seek protection under the Fourth Amendment, a defendant must demonstrate that he possessed a legitimate expectation of privacy in the area searched. *Whitehead*, 415 F.3d at 587. Individuals who wrongfully inhabit a

---

[3]During his closing arguments, Defendant's counsel noted that police issued Delano Brown a loitering ticket on the night of the raid.

[4]The Court notes that Defendant's testimony differed from the facts alleged in his Motion to Suppress. In the Motion to Suppress, he alleges that the unit was the residence of a friend, that he visited the unit every other day, and that he occasionally ate and slept at the residence. (Def.'s Mot. to Suppress, at 4.)

residence do not have a legitimate expectation of privacy in the area. *Id.*

Here, the undisputed testimony of the officers suggests that the individuals who occupied the Fourth Street unit on the night of the raid did so wrongfully. Defendant's testimony that he traveled to the unit to gamble bolsters the notion of wrongful occupancy. Because the law is clear that individuals who wrongfully occupy a unit do not have a legitimate expectation of privacy in the unit, *see id.,* Defendant's arrest did not implicate the Fourth Amendment.

*Brendlin v. California* does not bind the Court to conclude otherwise. *Brendlin* held that a car passenger has standing to challenge the constitutionality of a traffic stop. 127 S. Ct. at 2407-08; *see also United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007). Defendant does not cite, and the Court has not discovered, any case law which extends the holding of *Brendlin* to a set of facts, where, as here, the police conduct a search of a vacant dwelling illegally occupied by casual visitors engaged in unlawful activities. Defendant does not have standing to challenge the search of the illegally occupied unit.

Defendant's arguments, that the officers did not have probable cause to enter the unit or that exigent circumstances did not justify a warrantless search of the unit, remain. However, the Court need not address these substantive Fourth Amendment arguments, because, as noted previously, Defendant did not have a legitimate expectation of privacy in the unit. Accordingly, Defendant's Motion to Suppress Evidence is denied.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED Defendant's Motion to Suppress Evidence [Docket No. 17, filed on July

17, 2007] is DENIED.

                                        *s/ DENISE PAGE HOOD*
                                        DENISE PAGE HOOD
                                        United States District Judge

DATED: *November 30, 2007*

    I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2007, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager