**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,                          Criminal Case No. 07-20130

v.

                                   HONORABLE DENISE PAGE HOOD

HAKIM HOYLE,

       Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.     INTRODUCTION**

      This matter is before the Court upon conclusion of a bench trial.  Defendant Hakim

Hoyle is charged on a three-count Indictment with Felon in Possession of a Firearm, in violation

of 18 U.S.C. § 922(g); Possession with Intent to Distribute Cocaine Base, in violation of 21

U.S.C. § 841(a); and Possession of a Firearm in Furtherance of Drug Trafficking Crime**,** in

violation of 18 U.S.C. §924(c).

      Defendant represented himself at trial.  Federal Defender David Tholen initially

represented Defendant in this matter, including at Defendant's Motion to Suppress Evidence,

which was heard on October 2, 22, and 26, 2007.  At the evidentiary hearing, the Court heard

testimony from Officers Craig Schrameck ("Schrameck"), Gary Przybyla ("Przybyla"), Edward

Lawson ("Lawson"), LaShawn Peoples ("Peoples"), Steven Thompson ("Thompson"), and

Kristopher Rhinehart ("Rhinehart").  Defendant's Motion to Suppress was denied.  *See* Order

Denying Defendant's Motion to Suppress Evidence, November 30, 2007.  Defendant was

-1-

subsequently represented by Criminal Justice Act (CJA) Attorney Lawrence Bunting.  On November 25, 2008, Defendant brought an oral Motion for Withdrawal of Attorney Lawrence Bunting, which was granted on the same day.  On December 2, 2008, CJA Attorney Douglas Mullkoff was appointed to represent Defendant and, upon Defendant's decision to represent himself, Mr. Mullkoff was appointed as Defendant's standby counsel.

Defendant waived his right to a trial before a jury on September 16, 2008.  Pursuant to Fed. R. Crim. P. 23(c), "in a case tried without a jury, the court must find the defendant guilty or not guilty."  Rule 23(c) also provides for specific findings of fact to be made in open court, or in a written decision, upon request from either party prior to the Court's guilty or not guilty finding.

## II.   TESTIMONY AT TRIAL

The Government's case began on October 21, 2009.  Stephanie Tomasic, a forensic scientist at the Michigan State Police Lab, was qualified as an expert in the analysis of suspected controlled substances.  Ms. Tomasic testified that she tested the substance allegedly seized from Defendant and it contained crack cocaine.  Although there was testimony that the Government's earlier testing reported 19.22 grams of cocaine base, and Ms. Tomasic's testing found only 14.47 grams of cocaine base, Ms. Tomasic testified that the substance can dry out over time, resulting in a weight change in between testings.  Defendant did not dispute the amount or analysis of the controlled substance.

Detroit Police Officer Gary Przybyla testified that he, along with his partner Officer Edward Lawson, conducted narcotics enforcement at the Jeffries Housing Project on December 19, 2006.  He testified that, prior to this evening, he had frequent contact with the Jeffries Project, but not with the specific unit, 2907 Fourth Street.  He understood the unit to be vacant

based on a list issued by the Department of Housing and Urban Development and testified that, although the electricity was on, it did not appear as if anyone lived there.  Later, when confronted with previous testimony that he knew the unit was vacant based on previous encounters, Officer Przybyla stated that he could not remember whether he had previous contact with the unit.  Officer Przybyla testified that, based on complaints regarding narcotics activity, officers were sent to the Jeffries Project to conduct surveillance.  Based on this surveillance, a crew of about eight officers, including Officer Przybyla, conducted a narcotics raid at 2907 Fourth Street.

Officer Przybyla testified at trial that he was assigned to the Fourth Street side of the building, at the front door.  At the time Officer Przybyla went to knock and announce, a black male, whom he later identified as Defendant, opened the door, said "oh shit," attempted to close the door, and turned to run.  Officer Przybyla testified that he then gave chase through the living room, down into the basement.  He testified that, at the same time, the surveillance team entered the unit from the back door.  Officer Przybyla testified that, while inside the unit, he saw individuals coming down the stairs from the upstairs of the unit.  Although he had not observed it himself, he testified that he was told by the other officers that people in the unit ran upstairs and tried to jump out of the windows.  By the time Officer Przybyla reached Defendant, Defendant was in the basement.  Officer Przybyla testified that, prior to being detained, Defendant reached into his pockets and placed "something" up into the duct work.

Officer Przybyla was confronted with his previous testimony from the preliminary examination in 36th District Court.  Officer Przybyla's previous testimony indicated that, when apprehending Defendant, he "wrestled him down to the ground."  At trial, he attempted to

explain the inconsistency between his previous testimony and his police report. The report indicated that Defendant was ordered to the ground and complied with Officer Przybyla's demand. Officer Przybyla testified that "wrestled" was the wrong term to use, and that Defendant had, in fact, been compliant with his demands. He testified that when he searched Defendant, he recovered nothing. Officer Przybyla testified that he told Officer Lawson to retrieve items from the duct work. He testified that Officer Lawson retrieved items, a weapon and a bag containing suspected cocaine, from the duct work. Officer Przybyla testified that, from his experience, the amount of drugs coupled with the weapon would be consistent with the sale of narcotics.

Officer Przybyla was also confronted with his previous testimony, from the preliminary examination in 36th District Court, that he entered the rear door and ran through the kitchen down to the basement. Officer Przybyla's police report also indicated he entered from the rear of the unit and ran through the kitchen. He testified that one could not run through the living room and the kitchen at the same time, as they are two rooms separated by the stairwell to the basement, and he must have entered through the rear door. He testified that he went to the Jeffries Project on a daily basis, and confirmed that the layout of the various units was identical. Although Officer Przybyla testified that he was in the area on a daily basis, he testified that he did not know the surrounding streets well. When presented with Government Exhibits 6 and 7, Officer Przybyla agreed that they were photographs of the location, but he testified that he could not distinguish the front of the location from the back. He could not tell whether Defense Exhibit D-30 contained what appeared to be mailboxes. He also testified that Defense Exhibit

D-31, later identified as a photograph of a Jeffries Project unit basement, did not look familiar to him.

Officer Edward Lawson testified that he was partnered with Officer Przybyla on December 19, 2006. He testified that he had almost daily contact with the Jeffries Project, as it was a "special attention" area. He testified that the officers had not received "bitter" complaints about unit 2907 in particular, but about the Jeffries Project in general. After a strategic meeting with about seven or eight other officers outside of the Masonic Temple, Officer Lawson traveled to the unit with Officer Przybyla to conduct a raid on 2907 Fourth Street.

Officer Lawson testified that when he initially arrived at the unit he was standing to the side of the front porch, monitoring the windows, when the door opened and he saw a black male. He could not identify this male as the Defendant. Officer Lawson testified that the unidentified black male attempted to slam the door and Officer Przybyla gave chase, at which point Officer Lawson ran up the porch steps to follow his partner. Officer Lawson testified that he saw people running in the unit, which he described as being chaotic, but cleaner than most of the other units. Officer Lawson testified that, when he reached the basement, he saw Officer Przybyla standing with Defendant. He testified that Officer Przybyla advised him to check the duct work, from which Officer Lawson recovered a .22-caliber weapon with six live rounds of ammunition and a plastic bag containing two rocks of crack cocaine. When confronted with prior testimony that there was a plate covering the duct work, he testified that there may have been a plate there, but the duct work was unobstructed. Officer Lawson testified that he never saw the Defendant place anything into the duct work.

-5-

Special Agent Curtis Brunson of the Bureau of Alcohol, Tobacco, and Firearms (ATF) testified that he had worked with the ATF for almost twenty-one years, and had received specialized training regarding interstate nexus to determine where firearms were manufactured. He testified that he examined the firearm that had been entered into evidence, and learned that it was manufactured in Miami, Florida and sold in Georgia prior to entering Michigan.

At the close of the Government's case, Defendant moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing that there was insufficient credible evidence to find guilt beyond a reasonable doubt. The Court denied Defendant's motion on the basis that, while there were inconsistencies in the evidence presented, the question remained for the trier of fact as to whether those questions made the testimony unbelievable with respect to the apprehension of Defendant and the recovery of evidence allegedly belonging to him.

Defendant then proceeded to mount a defense.  Officer LaShawn Peoples testified that, upon the department's receiving several complaints about the Jeffries Project, he conducted surveillance in that area on December 19, 2006.  He later testified that they had received complaints about the specific address, 2907 Fourth Street, being connected with narcotics trafficking.  Officer Peoples testified that he was very familiar with the Jeffries Project, having frequented the area for eleven years.  While standing in a field across Temple Street, to the south of the unit, he observed foot traffic in the courtyard behind the unit, people entering the unit, and hand-to-hand transactions outside of the unit and at the door.  He testified that he could not positively identify that narcotics were being sold, but that this was not uncommon in surveillance. Officer Peoples testified that he never stopped anyone he suspected of purchasing narcotics because he was on surveillance, and conducting such stops was not part of his job when working

-6-

in that capacity.  During this surveillance, Officer Peoples never saw Defendant go in or out of the unit, and never saw Defendant involved in any of the observed drugs transactions.  He further testified that he never observed any of the people entering or leaving the unit actually carrying drugs.  Officer Peoples testified that, while he was on surveillance, an unknown individual approached him and advised him that they were selling drugs at 2907 Fourth Street.  Later, he explained that, while on surveillance, he asked someone about that specific unit.

Officer Peoples testified that, during the raid, he, along with Officers Craig Schrameck, Dion Triplett, Twanda Shaw, and Kristopher Rhinehart, went into the unit through the rear door, entering into the kitchen.  He testified that Officers Przybyla and Lawson entered at the front of the location.  Officer Peoples testified that the unit was in livable condition, and it appeared that people were living there, although he described the unit as "trashy."  Officer Peoples testified that he was inside of the unit for about twenty minutes, during which time his focus was on Mr. Rasheed Fordum.[1]  The only time he saw the Defendant during the raid was when the Defendant was handcuffed in the living room, prior to being transported to the police station.

Officer Steven Thompson testified that he was the officer who chased Mr. Fordum when Mr. Fordum made his escape after being handcuffed.  Mr. Fordum was not apprehended.  Officer Thompson further testified that he did not recall Defendant and Mr. Fordum contesting their arrest or arguing with the officers, and said that neither were visibly injured.

Officer Craig Schrameck testified that, on December 19, 2006, he conducted surveillance with his partner, Officer Peoples, in response to narcotics complaints at the Jeffries Project after

---

[1] The Court adopts the spelling of Mr. Rasheed Fordum's name from the police reports generated in connection with this case.

being verbally apprised of such complaints by Lieutenant Darren Szailagy.  He believed the

complaints were in writing, although they were given to the officers verbally during roll call.  He

testified that no specific address or location was provided.  He could not recall where Officer

Peoples was located, although he believed Officer Peoples was on Temple Street.  Officer

Schrameck testified that he moved throughout the courtyard during surveillance, hiding by trees

and in shadows, approximately ten to twenty yards away from Officer Peoples.  Officer

Schrameck never stopped anyone, but recalled seeing Officer Peoples speaking with someone at

one point during the surveillance.  Officer Schrameck testified that he never saw drugs going in or

out of the unit.

During the raid of the unit, Officer Schrameck entered the rear of the location with

Officers Peoples and Rhinehart.  He testified that he knew Officers Przybyla and Lawson entered

from the front of the location, although he did not actually see them enter.  He believed they

would have entered only a couple of seconds behind him.  Officer Schrameck testified that upon

entering the unit, he ran upstairs in pursuit of Mr. Fordum.  He did not recall if anyone else was

upstairs.  He described the unit as being dirty, and said that it did not appear as if people were

living there.  Officer Schrameck testified that the only contact he had with Defendant was after he

had already been handcuffed, and he did not recall ever talking with Defendant.

Latent print specialist Michael Sinke was qualified as an expert in latent print

identification.  He testified that he met with Special Agent Brunson and reviewed the evidence in

this case.  He also received a copy of Defendant's fingerprints.  He testified that he examined the

firearm, cartridges, and a corner of the plastic bag containing the narcotics entered into evidence

in this trial.  There were no fingerprints on the weapon or the bag.  Mr. Sinke testified that the

cartridges contained one fingerprint of value.  When tested and compared to a fingerprint known to belong to Defendant, Mr. Sinke determined that the latent print retrieved from the cartridge was not associated with Defendant, meaning it did not belong to him.  On cross-examination, Mr. Sinke testified that since he did not compare the print to known prints from Officer Przybyla or Officer Lawson, it was possible that the print could belong to either officer.

ATF Special Agent Kristine Beardsley testified regarding her complaint and affidavit. She testified that her affidavit contained the information necessary for probable cause, and did not include all facts and details related to the incident.  She further testified that she gathered the information for her affidavit primarily from her review of the related police reports.  Although her affidavit stated that she collected information from sources including witness interviews, she testified that she did not actually interview any witnesses to prepare this affidavit.  When questioned as to why she left out Officer Przybyla's account that the officers chased Defendant through the kitchen to the basement, Special Agent Beardsley testified that she thought she could summarize it by saying they ran through the dwelling, traveling to the basement.

Officer Dion Triplett testified that he was involved in the raid of the location on December 19, 2006.  He could not recall whether the officers issued tickets but testified that, according to his activity log, he issued three tickets that day.  Although he did not recall issuing a ticket to Defendant, he testified that his activity log reflected that he had.  He testified that he could not recall having any conversations with Defendant.  He further testified that he could not recall having observed Defendant in the unit at all that night, or on any prior occasion.  Officer Triplett testified that he secured the rear door and the main floor of the unit, and never entered either the

upstairs or the basement of the unit.  He recalled a group of black males running upstairs when he entered the location, but could not recall the exact number.

On cross-examination, Officer Triplett was questioned about a second police report, entered at 4:29 a.m. on December 20, 2006.  Officer Triplett was listed as the reporting officer, but the narrative described him as having chased Mr. Fordum.  Officer Triplett testified that the second report did not belong to him, and that the report entered at 4:17 a.m. on December 20, 2006 was the only report he generated relative to this incident.  When recalled, Officers Peoples and Schrameck testified that the report could have belonged to Sergeant Myron Travis.

Officer Kristopher Rhinehart testified that he was also involved in the raid of the location on December 19, 2006.  He was not sure whether he had previously encountered this particular unit, but he testified that he had been to other locations in the Jeffries Project and was frequently in the area due to constant complaints of narcotics trafficking.  He testified that there were often people standing outside the units, even at night.  On the night of the incident, Officer Rhinehart testified that he secured the perimeter, secured the downstairs area, and went upstairs.  He did not take part in any chase and could not recall whether he ran into Officer Przybyla or Officer Lawson when he entered into the unit.  He testified that there were people upstairs, but he could not recall how many.  Additionally, he could not recall how these people came downstairs, as he was focused on Mr. Fordum.

Sergeant Myron Travis testified that the second police report, on which Officer Triplett was listed as the reporting officer, was indeed his own.  He surmised that Officer Triplett completed his report immediately before Sergeant Travis started his, and Sergeant Travis must not have changed the entry in the "reporting officer" field.  Sergeant Travis testified that he

entered the rear door of the location a few minutes after the other officers entered.  He did not

observe any windows being broken while he was standing outside of the unit.  He testified that he

heard running in the interior of the location, which sounded as if it could have been people

running upstairs, but as he was outside the unit he could not be sure.  Although Sergeant Travis's

narrative described his having observed Defendant being pursued into the basement, Sergeant

Travis testified that he never actually observed this happening, and that he actually followed the

officers who chased Mr. Fordum.  He testified that his report was not necessarily what he

observed, but a summary of the events as described by all of the other officers.  When asked why

he did not include Officer Przybyla's account of chasing Defendant through the kitchen, Sergeant

Travis testified that the purpose of his report was to document the chase of Mr. Fordum and Mr.

Fordum's subsequent escape.  Sergeant Travis initially testified that he saw Defendant come from

upstairs. Later he said that he actually saw Defendant come upstairs *from* the basement, and that

he had probably misspoke.  Sergeant Travis never had a conversation with Defendant.

On cross-examination, Sergeant Travis testified that he had a list of vacant dwellings, had

received "bitter" complaints about drugs, and had made previous arrests at the unit. He testified

that he had been made aware of complaints regarding the 2907 address through Lieutenant

Szailagy.  He also testified that he was not sure if there were any documents recording the

complaints made about drug trafficking.  He testified that a vacant unit lacking valid electricity,

along with the gun, money, and cocaine recovered from Mr. Fordum provided evidence of drug

trafficking.

The parties stipulated that the police report of Officer Twanda Shaw, who was

subpoenaed, failed to appear, and was later excused by the Court at the request of the Defendant,

would be entered into evidence.  Officer Shaw's police report stated that the unit was a known narcotics location from which they had observed numerous narcotics transactions.  Officer Shaw reported that she entered the unit from the back of the location and observed black males running inside toward the upstairs of the location.  Shaw reported that she secured the rear door and the main floor.  She did not report having had any contact with Defendant, other than having observed him being escorted to the rear of the location with Mr. Fordum.

The Defendant was the final witness in the case.[2]  He testified that he arrived at 2907 Fourth Street around 7:45 or 8:00 p.m. on December 19, 2006.  Defendant testified that he was originally with his cousins at Peterboro Street and Second Avenue, a very short distance away from the Jeffries Project.  He testified that he was extremely familiar with the Jeffries Project because, although he had never resided there, he had family that lived both in the high rise apartment and the "small side" of the Jeffries Project.  He also testified that he had been to this particular unit numerous times.  Defendant testified that he was never in the basement of this unit, although he had been in the basement of other units in the Jeffries Project.  He testified that he did not know the unit to be vacant, as "Little D" and his cousin, Delano, often slept there.[3]  But he also knew the unit to be a "party house."  He testified that he would go there to socialize, gamble, and play video games.

_____

[2] The Defense called Prentiss Edwards, Jr., a prosecutor in the 36th District Court for Wayne County, but Edwards was excused upon the parties' stipulation to the admission of the January 9th, 2007, 36th District Court Preliminary Examination Transcript.  (Defense Exhibit D-36).  The Defense also called David Gentry, investigator for the Federal Defender's Office, who testified that he took several photographs entered into evidence as trial exhibits.

[3] The Court finds that the evidence demonstrated that the unit was not legally occupied by anyone.

-12-

Defendant testified that he went to the unit on December 19, 2006, because he wanted to shoot dice. Although he claimed there were people selling drugs in the area outside of the units, this was not unusual from his experience at the Jeffries Project. He testified that there were eleven to thirteen people in the unit and they were all in the living room gambling, with the exception of his cousin Delano and his girlfriend who were upstairs in a bedroom. He testified that he did not know many of the people, he was just there to gamble. Some people smoked marijuana, but not around Defendant. While some people present may have sold drugs, Defendant testified that they were not being sold out of this unit. There was a television, entertainment center, appliances, heat, lights, water, and two couches. He also testified that Delano's dog was in the basement of the unit.

Defendant testified that he was sitting on an arm of the couch near the stairs leading upstairs, watching a dice game, when he heard a noise come from the kitchen. He testified that he did not know whether it was the police or someone else. He testified that he immediately ran upstairs, ran into one of the three bedrooms, broke the window, and tried to get out. Defendant testified that a uniformed officer standing outside the rear of the unit shined a light up to the window and ordered him to get back into the unit. Defendant testified that he and others were ordered by Officer Schrameck to come downstairs, and no police officers were upstairs when they were told to come down. Defendant testified that he was the first person to get downstairs, and was handcuffed at the bottom of the landing. Defendant testified that he observed the basement door open, and a sixteen or seventeen year-old male standing at the top of the stairs with Officers Przybyla and Lawson.

-13-

Defendant also testified that he heard "hollering" coming from upstairs, and observed Officers Przybyla and Lawson run upstairs when they heard the commotion.  He also testified that he observed Officer Lawson go into the basement.  The dog, that Defendant had previously stated had been in the basement, ran upstairs and out of the front door.  It should be noted Officer Przybyla also recalled a dog running from the unit.  Defendant testified that he observed Officers Przybyla and Lawson go upstairs again, and also into the basement at least one additional time.

Defendant testified that he was issued a ticket by Officer Triplett, and asked if he could leave by exiting the back door.  He was informed that he had to leave by the front door, where he was stopped by Officers Przybyla and Schrameck.  Officer Przybyla took his ticket, and informed him that his name had not been cleared yet.  Defendant testified that they released people one-by-one until only he and Mr. Fordum remained.  Defendant claimed Mr. Fordum was issued a ticket as well.  Defendant testified that he and Mr. Fordum started swearing at the officers, asking why they had been arrested.  He testified that the officers never answered him, and forced him outside through the back of the location to a van for transport, at which time Mr. Fordum escaped. Defendant denied having had any cocaine, or having been in the basement.

## III.    INDICTMENT

### A.    Count 1, 18 U.S.C. § 846 - Felon in Possession of a Firearm

The Indictment charges Defendant with being a convicted felon in possession of a firearm. Defendant is charged with, having been previously convicted of a felony, knowingly possessing the following firearm: an RG Industries .22 caliber revolver, Model RG14, serial number #278312, which was manufactured outside the State of Michigan, and thus traveled in interstate commerce.  To find the Defendant guilty of this crime, the Court must find each of the following

three elements beyond a reasonable doubt: 1) that the Defendant has been convicted of a crime punishable by imprisonment for more than one year; 2) that the Defendant, following his conviction, knowingly possessed the firearm described in the indictment; and 3) that the specified firearm crossed a state line prior to the alleged possession.  *See* Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition, § 12.01 - Firearms - Possession of Firearm by Convicted Felon (18 U.S.C. § 922(g)(1)).

As to the first element, Defendant stipulated with the Government, in Government's Exhibit 3, that he had been convicted of a felony, knew that he had been convicted of a felony, had not had his conviction expunged nor his rights restored, and that the Government could prove this beyond a reasonable doubt.  The first element has been met.

Regarding the third element, the Court has before it the undisputed testimony of ATF Special Agent Curtis Brunson that the weapon at issue, RG Industries, model RG14, .22 caliber revolver bearing serial number 278312, was in fact a firearm and was manufactured outside the state of Michigan after 1898.  The third element has been met.

The only element in dispute is the second element.  "Pursuant to 18 U.S.C. § 922(g)(1), a conviction may be based on actual or constructive possession of a firearm.  Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir.

2008) *citing United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (internal citations omitted).[4]

      With respect to the second element, the Government has not met its burden of demonstrating beyond a reasonable doubt that Defendant knowingly possessed the firearm described in the indictment.  The only evidence to demonstrate that Defendant possessed the firearm is the testimony of Officer Przybyla.  Inconsistencies in Officer Przybyla's testimony, particularly with respect to certain facts regarding the actions he took upon apprehending Defendant, where he allegedly entered the unit, and where he allegedly chased Defendant, render Officer Przybyla's testimony to be lacking in credibility.  Surveillance showed drug sales took place at the back of the house.  There was no testimony that any drug sales occurred at the front of the house.  Despite previous conflicting testimony, Officer Przybyla repeatedly testified that he entered through the back of the location, and that he chased Defendant throughout the kitchen.  He further testified that, having had extensive contact with the units at the Jeffries Project, he still was unable to distinguish the front of a unit from the back of a unit in a photograph, or to recognize a basement in the unit.  Although there was previous testimony that he had to "wrestle" Defendant to the ground, at trial Officer Przybyla testified that, consistent with his police report, Defendant complied with an order to get on the ground.  Additionally, the sole fingerprint recovered from the ammunition belonged to someone other than Defendant.  In light of these inconsistencies, the Court cannot rely on Officer Przybyla's testimony to constitute proof beyond a reasonable doubt that Defendant ever possessed the firearm at issue in this case.  The Court is particularly concerned that Officer Przybyla, the only eyewitness to see Defendant

---

[4] The Government does not argue that this is a constructive possession case.

-16-

place items into the duct work, inflates his testimony about his confrontation in the basement with Defendant.  During the preliminary examination in 36th District Court, Officer Przybyla testified that he "wrestled [Defendant] down to the ground."  When pressed on this point during trial, he conceded that he actually ordered Defendant to the ground, and Defendant complied.  This inflation of the confrontation between Officer Przybyla and Defendant is of grave concern to the Court relative to Officer Przybyla's credibility.

While any one inconsistency would be insufficient to discredit Officer Przybyla's testimony, when taken together and viewed in light of Officer Przybyla's inflation of the arrest in the basement to a wrestle with Defendant, this Court is unable to tell whether Officer Przybyla is lying or simply mistaken about having seen Defendant place the narcotics and the weapon into the duct work.[5]  This, coupled with testimony that at least two people may have been living in the unit and that a dog was kept in the basement, leaves open the opportunity for someone other than Defendant to have stored the drugs and weapon in the basement.  The only other person in the basement with Defendant was Officer Lawson.  Although Officer Lawson testified that Officer Przybyla advised him to check the duct work, he did not testify that Officer Przybyla advised him to check the duct work because Defendant had placed something up there.  Significantly, Officer

---

[5] Throughout these proceedings, Defendant expressed concerns regarding witnesses committing perjury.  "The elements of perjury are 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (citing *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L. Ed. 2d 445 (1993)).  Mere inconsistencies in a witness' testimony are insufficient to demonstrate that the prosecutor knowingly used false testimony to obtain a conviction; rather, these inconsistencies form a basis for impeaching testimony. *See People v. Cash*, 388 Mich. 153, 162, 200 N.W.2d 83 (Mich. 1972); *People v. Arnston*, 10 Mich. App. 718, 160 N.W.2d 386 (Mich. Ct. App. 1968) (inconsistencies might inure to a defendant's benefit by affecting the credibility of a witness, but do not establish perjury).

-17-

Lawson never observed Defendant place anything into the duct work.  Further, his testimony about the duct work does not reflect a good memory of whether the duct work was open or closed, although he testified that there was no obstruction preventing him from reaching into the duct work.

The Court finds the Defendant's testimony regarding the events on December 19, 2006, lacking in credibility as well.  However, the burden rests with the Government.  "The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant . . . ."  *See* O'Malley, Grenig, and Lee, Federal Jury Practice & Instructions (5th Ed. 2000): 12.10: Presumption of Innocence, Burden of Proof, and Reasonable Doubt.  Although there is credible testimony that Defendant entered the basement, the Court is unable to find beyond a reasonable doubt that Defendant reached into his pockets and placed items into the duct work during the brief period of time in which the officers were chasing him.

The Government must prove each element beyond a reasonable doubt.  "A reasonable doubt is a doubt based upon reason and common sense – the kind of doubt that would make a reasonable person hesitant to act.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs."  *Id.*  The Government has failed to meet its burden of proof beyond a reasonable doubt.  Because the second element has not been met, the Government has not proven beyond a reasonable doubt that Defendant, having been previously convicted of a felony, knowingly possessed an RG Industries .22 caliber revolver, Model RG14, serial number #278313, which was manufactured outside the State of Michigan, and thus traveled in interstate commerce, in violation of 18 U.S.C. § 846**.**

-18-

**B.**   **Count Two, 21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute Cocaine Base (Crack Cocaine)**

The Indictment charges Defendant with the crime of possession with intent to distribute cocaine base, or crack cocaine.  Defendant is charged with knowingly, intentionally, and unlawfully possessing with intent to distribute more than 5 grams of cocaine base (crack cocaine), a Schedule II controlled substance.  To find the Defendant guilty on this count, the Court must find each of the following three elements beyond a reasonable doubt: 1) the Defendant possessed the controlled substance described in the indictment, specifically cocaine base; 2) the Defendant knew that the substance was a controlled substance, specifically cocaine base; and 3) the Defendant intended to distribute the controlled substance.  *See* Devitt, Blackmar & O'Malley, Federal Jury Practice & Instructions (4th Ed. 1990): 54.07: Elements of Offense.

As discussed above, the Court finds the testimony of Officer Przybyla to be lacking in credibility.  As with the firearm, the only evidence that Defendant possessed the cocaine base stems from Officer Przybyla's testimony.  The Government has failed to prove the first element beyond a reasonable doubt.  In the absence of proof of possession of the cocaine base, the Defendant's knowledge of the substance and any intent to distribute also cannot be proven beyond a reasonable doubt.  The Government has not proven beyond a reasonable doubt that Defendant knowingly, intentionally, and unlawfully possessed with intent to distribute more than 5 grams of cocaine base (crack cocaine), a Schedule II controlled substance.

**C.**   **Count Three, 18 U.S.C. § 924(c) – Possession of Firearm in Furtherance of Drug Trafficking Crime**

The Indictment charges Defendant with possessing a firearm in furtherance of a crime of violence or a drug trafficking crime.  Defendant is charged with knowingly possessing an RG

-19-

Industries .22 caliber revolver, Model RG14, serial number #278312, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, specifically, the crime of Possession with Intent to Deliver Cocaine Base (Crack Cocaine). To find the Defendant guilty on this count, the Court must find each of the following three elements beyond a reasonable doubt: 1) that Defendant committed the crime charged in Count Two, namely, possession with intent to distribute cocaine base; 2) that Defendant knowingly possessed a firearm; and 3) that the possession of the firearm was in furtherance of the crime charged in Count Two. *See* Sixth Circuit Pattern Criminal Jury Instructions, 2005 Edition, § 12.03: Firearms – Possessing a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime (18 U.S.C. § 924(c)(1)(A)(i)).

With respect to the first element, the Court has already found that the Government has failed to prove Defendant possessed cocaine base with an intent to distribute. The first element has not been met. As to the second element, the Court has already found that the Government has failed to prove Defendant knowingly possessed a firearm. The second element has not been met. Having failed to meet its burden on the first and second elements, the Government cannot meet its burden on the third element. The Government has not proven beyond a reasonable doubt that Defendant knowingly possessed an RG Industries .22 caliber revolver, Model RG14, serial number #278312, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, specifically, the crime of Possession with Intent to Deliver Cocaine Base (Crack Cocaine).

## IV.   **CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** and the Court so finds that Defendant is **NOT GUILTY** of Count I, Felon in Possession of a Firearm, **NOT GUILTY** of Count II, Possession With Intent to Distribute

-20-

Cocaine Base (Crack Cocaine), and **NOT GUILTY** of Count III, Possession of Firearm in

Furtherance of Drug Trafficking Crime.


s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  November 23, 2009

     I hereby certify that a copy of the foregoing document was served upon counsel of record on
November 23, 2009, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager
